IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JESUS MENDOZA-RODRIGUEZ,<br>    Defendant. | 1:05-cr-414-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant Jesus Mendoza-Rodriguez ("Defendant") Objections to the Report and Recommendation of the United States Magistrate Judge. (Obj. [39].) The Report and Recommendation ("R&R") were issued by Magistrate Judge E. Clayton Scofield, III on May 12, 2006. (R&R [38].) In the R&R, the Magistrate Judge considered Defendant's Motion to Suppress Statements [14] and Motion to Suppress Evidence [15]. An evidentiary hearing was conducted on the motions on November 8, 2005, and on February 6 and 10, 2006. Thereafter, Defendant filed his Post-Hearing Brief in Support of Motions to Suppress Evidence and Statements [33] and the Government filed its Opposition Response to Defendant's Motions to Suppress [37]. The Government has not

filed a response to the Objections asserted by the Defendant.

*Standard of Review*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1)(C); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990). The Court has reviewed *de novo* those portions of the R&R to which the Defendant has objected. The Court has reviewed the remainder of the R&R for plain error. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

*Objections*

Defendant asserts twenty (20) objections to the R&R. The objections are rambling, unorganized, overlapping and redundant. However, if reviewed carefully, the objections appear to fall into three (3) categories: (i) objections to fact findings;

(ii) objections to legal conclusions; and (iii) objections to interpretation of legal authorities.

    1.    <u>Objections to fact findings</u>

Defendant's objections to the Magistrate Judge's fact findings fall into three sub-categories:

        a.    <u>Entry into the apartment</u>

Defendant objects to those portions of the R&R regarding entry into his apartment that found:

1. Defendant encountered the investigating officers at the threshold of the apartment. (Obj. 1, 4.)
2. Entry into the apartment was not forced. (Obj. 1, 4, 8.)
3. Entry into the apartment was with consent. (Obj. 8, 9.)
4. Weapons were not drawn by law enforcement officials who conducted the search. (Obj. 1, 3.)

        b.    <u>Consent to search</u>

Defendant objects to those portions of the R&R regarding whether Defendant consented to the search of his apartment that found:

1. Defendant was asked to consent to a search of his

3

>   apartment and that he gave his consent, including by executing a consent to search form.  (Obj. 2, 9, 10.)
>
> 2. The consent to search form was executed before the search was conducted and not as Defendant was being removed from the premises.  (Obj. 2, 8, 9, 10.)

   c. Weighing of testimony

Defendant's objections to the Magistrate Judge's factual findings principally are based on the affidavit testimony of Defendant's wife, Leticia Poinciano and the Defendant's father-in-law, Cruz Castaneda, and the suppression hearing testimony of Mr. Castaneda.  Defendant objects to the Magistrate Judge giving greater credit to the testimony of Agents Aguilar and Walker than he did to the testimony of Defendant's wife and her father.[1]  (Obj. 7, 10, 11, 12, 13, 18.)

   2. Objections to legal conclusions

Defendant objects to various legal conclusions reached by the Magistrate

---

[1] Defendant objects to the suggestion that discussions towards cooperation between Defendant and the officers began only after Defendant was Mirandized. (Obj. 6.)  The Court does not interpret the R&R to specify that these discussions occurred only after Defendant was Mirandized.  Defendant's objection to any such finding is overruled.

Judge. In these objections, Defendant generally claims that had the Magistrate Judge accepted the defense witnesses' account of the search, the Magistrate Judge would have reached different legal conclusions. The legal conclusion objections fall into the following sub-categories.[2]

    a.    <u>Consent</u>

The Defendant objects to the following legal conclusions reached by the Magistrate Judge concerning the search:

    1.    Defendant consented to the search before it was conducted. (Obj. 12, 14.)

    2.    The conduct of the agents entering the apartment did not cause Defendant's consent to be involuntary. (Obj. 12, 14.)

    3.    Physical evidence obtained from the search is admissible. (Obj. 13.)

    b.    <u>Statements</u>

---

[2] Because the objections are not clearly articulated, the Court has had to extrapolate from the generalized arguments made in the objections to determine the basis for these objections.

The Defendant objects to the following legal conclusions reached by the Magistrate Judge concerning Defendant's statements to law enforcement officials:

1. Defendant was not in custody and thus <u>Miranda</u> warnings were not required to be given until drugs and the firearm were found in the bedroom of the apartment.[3] (Obj. 15, 19.)

2. Defendant volunteered that the contraband items found[4] in the apartment were his and that this statement was not made in response to questions asked of him by the investigating agents but was uttered to deter agents from

---

[3] Defendant asserts in Objection 16 that it is "unclear at which time the Magistrate has determined that the right to Miranda warnings was triggered." (Obj. 16.) The Court finds no ambiguity. The Magistrate Judge was clear about the point when he believed <u>Miranda</u> warnings were required. He stated: "statements made in response to questioning by the officers after the drugs and gun were found, and before the <u>Miranda</u> warnings were administered, should be suppressed." (R&R, at 17.) Defendant's objection on this ground is therefore overruled.

[4] This objection is based on a statement made by the Defendant after the discovery of the gun and drugs in the bedroom and the discovery of drugs in the "children's room." (R&R, at 5-6.)

6

asking questions to Defendant's family members. (Obj. 5, 17, 19.)

3. None of the statements made by Defendant were the product of an illegal search. (Obj. 14.)

3. Interpretation of authorities

Defendant objects to the Magistrate Judge's interpretation of United States v. Tovar-Rico, 61 F.3d 1529 (11th Cir. 1995); Wong Sun v. United States, 371 U.S. 471 (1963); Brown v. Illinois, 422 U.S. 590 (1975); Oregon v. Elstad, 470 U.S. 298 (1985); Missouri v. Seibert, 542 U.S. 600 (2004); and United States v. Gonzalez-Lauzan, 437 F.3d 1128 (11th Cir. 2006). (Obj. 11, 14, 18, 19, 20.)

*Discussion*

   *a. Fact Findings*

Defendant objects to various facts set forth in the Factual Background section of the R&R. The Court reviews these findings *de novo* and has given a fresh consideration to the evidence presented.

The Court has reviewed all of the testimony and exhibits introduced at the suppression hearing. Specifically, the Court reviewed the testimony of Cruz

Castaneda, Christopher Ryan Burns, Donna Harris, and Sarah Tinder, who testified at the hearing, and reviewed the affidavits submitted by Mr. Castaneda and Leticia Poinciano, the Defendant's wife. This testimony was compared with the testimony of Special Agents Aguilar and Baker, the two federal investigators involved in the August 8, 2005, search of the Defendant's residence and who also testified at the suppression hearing. In its review, the Court evaluated the quality, consistency and credibility of the testimony offered by each witness. In doing so, the Court found the testimony of Agents Aguilar and Baker (collectively "the Agents") to be particularly specific and detailed, evidencing significant recollection of the events surrounding the search and their interaction with the Defendant. Agent Aguilar provided a detailed chronological description of the initial events of the search. In it, he stated without qualification that the officers who participated in the search did not draw their weapons. This testimony was corroborated by Special Agent Baker and was further supported by the testimony of two residents of the apartment complex where the search was conducted.[5] These two disinterested neighbors stated they did not see weapons drawn.

---

[5] The Defendant called the residents to testify at the hearing.

Overall, the testimony offered by the Agents was persuasive and entitled to far greater credit than the testimony of Ms. Poinciano and Mr. Castaneda. Specifically, the Court finds that the evidence, especially the testimony of Agent Aguilar, shows that the law enforcement officials were invited into the Defendant's residence, that the invitation was voluntary, weapons were not drawn, force was not applied, and the Defendant was free to refuse entry or to demand that the investigating agents leave. The Court further finds that the evidence establishes that the Defendant, upon entry of the Agents into his apartment, engaged them in a voluntary conversation at a table in his kitchen. That discussion, which was conducted in the Defendant's native language, Spanish, centered around the Agents' request that the Defendant consent to a search of his apartment. The evidence establishes further that Defendant first verbally and voluntarily consented to the search and then executed a consent to search form in Spanish.[6] That the search was consensual is corroborated by the Defendant's cooperation and his

---

[6] The Court notes Defendant did not object to the factual finding that Defendant "invited Agents Walker and Aguilar inside the apartment, and Agent Aguilar asked [Defendant] for permission to search the residence" and that the agents "walked with [Defendant] to the kitchen table, and the three of them sat around the table while Agent Aguilar discussed (in Spanish) the written consent to search form with [Defendant]." (R&R, at 3-4.)

9

involvement in the conduct of the search, especially by directing the Agents to the bedroom where a firearm and drugs were present and then voluntarily directing the Agents to these items.

Defendant claims the greatest and compelling weight should have been given to Ms. Poinciano's affidavit and Mr. Castaneda's hearing testimony. The Court strongly disagrees. First, the credibility of the testimony presented by Ms. Poinciano, which was offered only by affidavit, could not be evaluated because she did not testify at the hearing. The Magistrate Judge was able to evaluate Mr. Castaneda's credibility at the hearing and elected to give greater credit to the testimony of Agents Aguilar and Baker, both of whom testified. Significantly, the testimony of Ms. Poinciano and Mr. Castaneda was not persuasive on certain issues and was contradicted on others. For example, the testimony that guns were drawn was presented in the affidavit executed by the Defendant's wife and in the hearing testimony of Defendant's father. Both of these witnesses have a direct and substantial interest in the outcome of the prosecution. Their testimony is outweighed significantly by the testimony of the four other witnesses who testified at trial, especially the testimony of two objective observers of the events of that day, who Defendant called as witnesses and who either

testified that guns were not drawn or could not remember if they were drawn or not.

That the law enforcement personnel did not inappropriately conduct the search or conduct it overly aggressively (as Ms. Poinciano and Mr. Castaneda claim) is evidenced in the testimony of one of the residents who observed the agents approach the apartment. That resident commented that one of the agents noticed the resident's dog, noted that it was cute, and may even have petted it. This discredits the account offered by Defendant's witnesses that the officers were acting with aggressive urgency.

Agent Aguilar also testified about Defendant's execution of the consent to search form. He stated that the Defendant invited the investigating agents into his apartment, sat with them at his kitchen table, reviewed the consent to search form and executed it before the search was conducted. Agents Aguilar and Baker both signed the consent form as witnesses to Defendant's execution of it. There is no material or credible evidence discrediting the testimony that the form was signed before the search was conducted or that it was not signed voluntarily. Defendant argues in his objections that Ms. Poinciano's affidavit testimony should be controlling on this issue. A close examination of it, however, shows that while she

11

believes she saw her husband sign a paper "right before he was taken away," she stated further that when she "spoke with [her husband] by telephone later that evening, he told [her] the paper was for the police officers to search the apartment." She did not see the paper, was not present in the kitchen when the Defendant was with Agents Aguilar and Baker, and based her affidavit statement only on a post-arrest conversation she had with her husband. The Magistrate Judge properly gave greater and persuasive credit to Agent Aguilar who testified before him.

The Court also has evaluated the testimony of the witnesses regarding the Defendant's statement that the contraband discovered in the apartment was his. The circumstances under and manner in which the statement was made, specifically that it was not in response to a question addressed to him and was made to insure agents knew he was responsible for the contraband and not his wife, provide compelling support for the Magistrate Judge's finding that the statement was volunteered.

Having independently reviewed all of the evidence and testimony presented to the Magistrate Judge, the Court concludes the Defendant's objections to the factual findings in the R&R and his objection to the credit given to the testimony of the testifying agents Aguilar and Baker (Obj. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13,

12

17, 18) are overruled. The Court adopts the Magistrate Judge's findings of fact in considering the Defendant's further Objections.

   2. *Legal Conclusions*

Defendant objects to the conclusions reached in the R&R that (i) Defendant's consent to the search of his premises was voluntary and the physical evidence obtained from the search was admissible; (ii) that he was not in custody when he made his incriminating statements to the investigation officers; and, (iii) that Defendant's statement that the contraband discovered was his was voluntary and not the result of a custodial interrogation. These objections are overruled.

      a. Voluntariness of consent

A search, to which consent is voluntarily given, is constitutional. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Consent is voluntary if it is the product of an "essentially free and unrestrained choice." Schneckloth v. Bustamonte, 412 U. S. 218, 225 (1973); United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001). Whether consent was voluntary is based on the totality of the circumstances including whether coercive police procedures were involved, the extent of the defendant's cooperation, the defendant's awareness of his right to refuse to

13

consent, his education and intelligence and his belief that incriminating evidence would be found. See United States v. Acosta, 363 F.3d 1141, 1151 (11th Cir. 2004); United States v. Simms, 2004 WL 2149004, *5 (11th Cir. 2004). Here, Defendant does not claim he did not consent verbally. Indeed, he focuses on his contention that he executed a consent to search form late in the search process. Defendant also contends his consent was not voluntary, relying principally on the argument that the agents approached and entered his house with their weapons drawn and entered by force, thereby rendering his consent involuntary. This is not only unsupported, but an evaluation of the voluntariness considerations that apply in this circuit persuade the Court that Defendant's consent was voluntary. Agent Aguilar discussed the consent with Defendant, in Spanish, at Defendant's kitchen table. The evidence is that the conversation was not coerced and took place in a location Defendant selected in his home. During the discussion and throughout Defendant's encounter with law enforcement agents that day, he was cooperative indicating a desire to acknowledge his activities and insuring that it was clear his family members were not involved in the conduct being investigated. From the description of the events of that day, it appears that Defendant is reasonably intelligent. He appeared to know there was incriminatory evidence that agents

14

would discover, and rather than delay its discovery, he immediately directed agents to where guns and drugs were maintained in the apartment. These factors compel the conclusion that Defendant was aware of the consequences of consenting to the search and did so promptly and voluntarily,[7] verbally and ultimately in writing. Defendant therefore consented to the search, and the evidence obtained therefrom was admissible.

      b.      Statements of Defendant

Defendant claims that all of the statements he made on the day of the search are required to be suppressed and objects to the R&R findings that the statements are admissible. Defendant's argument is that he was in custody from the moment the law enforcement officials entered his apartment, and in the absence of a Miranda warning, the statements made in response to questions posed to him must be suppressed. Although Defendant acknowledged he was read his Miranda rights at some point during the search activities, he argues this did not cure the constitutional defect in his interrogation, and even statements made after he was

---

[7] Defendant argues that United States v. Tovar-Rico, 61 F.3d 1529 (11th Cir. 1995) requires the Court to find Defendant's consent was involuntary. The Court disagrees. The coercive police conduct in Tovar-Rico simply is not present in this case.

advised of his rights are required to be suppressed.

      c.    <u>Pre-drug discovery statements</u>

Defendant first objects to the findings of the Magistrate Judge that any statements he made before the gun and powder methamphetamine were found in his bedroom are admissible. Defendant claims these statements are required to be suppressed because he was in custody when they were made, and thus <u>Miranda</u> warnings were required to be given. Defendant's argument apparently is based on his claim that the law enforcement personnel who conducted his search restricted his movement and thus effectively placed him in custody when they first entered his apartment.[8] This argument is not persuasive.

The question is whether Defendant was deprived of his "freedom of action in any significant way" so that the Defendant could be considered in custody. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). The test is whether "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree

---

[8] To the extent Defendant claims the statements are required to be suppressed as the fruit of the poisonous tree because the search was illegal, <u>Wong Sun v. United States</u>, 371 U. S. 471 (1963), that argument is discredited by the Court's finding that the Defendant voluntarily consented to the search.

associated with a formal arrest' to such an extent that he would not feel free to leave." United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000). In this case, all of the facts lead to the conclusion that a reasonable person in the Defendant's position would not have considered they were in custody up through the time the guns and powder methamphetamine were discovered. The Defendant allowed the agents in his home, was motivated to cooperate to avoid implicating his family, invited them to his bedroom so that he could meet with Agents Aguilar and Baker more privately, and volunteered the location of his firearm and the methamphetamine. He cannot be considered to have been in custody, Miranda warnings were not required to be given and the statements he made are admissible against him. Accordingly, the Court overrules Defendant's objections (Obj. 15, 16, 19) to the findings that the statements he made before the firearm and methamphetamine was discovered were made while he was in custody.

      d.    <u>Statements made after discovery of the firearm and methamphetamine</u>

Defendant objects to the conclusion in the R&R that (i) the statement he made that the gun and methamphetamine were his; and (ii) the statements he made after the Miranda warnings were given are admissible. The Court agrees with the Magistrate Judge's finding that the Defendant's statement that the gun and

17

methamphetamine were his was spontaneously volunteered and thus admissible. Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991). The facts show that this utterance was prompted by a question asked to his wife, not to the Defendant, and that the statement was unsolicited and volunteered. The Court also agrees that any statements Defendant made after Miranda warnings were given are admissible because they are causally attenuated from the discovery of the gun and methamphetamine and the later administration of Miranda warnings "suffic[ed] to remove the conditions that precluded admission" of an earlier un-Mirandized statement. Oregon v. Elstad, 470 U.S. 298, 313 (1985); see also Missouri v. Seibert, 542 U.S. 600 (2004); United States v. Gonzalez-Lauzan, 437 F.3d 1128 (11th Cir. 2006).[9] Thus, the Court overrules the Defendant's objection to the Magistrate's finding that statements made by Defendant before the discovery of the

---

[9] This analysis begs the question whether the Magistrate Judge's determination that "after the drugs were found in his apartment, Defendant would reasonably have felt that he was no longer free to go on about his way. At that point, warnings under Miranda should have been administered," was a correct conclusion. (R&R, at 17.) The Government, however, did not object to this finding, and the Magistrate Judge does not appear to have committed plain error in reaching this conclusion.

firearm and illegal drugs are admissible. (Obj. 14, 15, 17, 19.)

### *Interpretation of cases*

Finally, the Court has reviewed each of the cases Defendant claims were misconstrued by the Magistrate Judge. The Court determines the Magistrate Judge's consideration and application of these cases was fair, objective and legally sound. Defendant's objections to their application (Obj. 11, 14, 18, 19, 20) are overruled.

## **CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Objections to the Report and Recommendation of the United States Magistrate Judge [39] are **OVERRULED**. The Court **ADOPTS AS ITS ORDER** the Report and Recommendation [38] issued by the Magistrate Judge, as supplemented by the Court's opinion in this order. Defendant's Motion to Suppress Statements [14] and Motion to Suppress Evidence [15]are **DENIED** as set out in the Report and Recommendation and in this Order.

**SO ORDERED** this 17th day of October, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE